FILED BY **KS** D.C.

**Dec 1, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 21-60329-CR-SINGHAL/SNOW
### CASE NO. _____

**18 U.S.C. § 1343**
**18 U.S.C. § 981(a)(1)(C)**

**UNITED STATES OF AMERICA**

**v.**

**MARK DANIELS,**

**Defendant.**
_____/

## INDICTMENT

The Grand Jury charges that, at all times relevant to this Indictment:

### GENERAL ALLEGATIONS

1.   The U.S. General Services Administration (GSA) administered the Federal Surplus Personal Property Donation Program. GSA arranged the transfer and utilization of surplus U.S. Government property by other federal agencies.

2.   The Florida State Agency for Surplus Property (FLSASP) was authorized to receive surplus property from the federal government and to distribute that property to qualified organizations.

3.   The FLSASP requested property from the GSA on behalf of qualified organizations. Once the qualified organization was allocated the property, the FLSASP then administered distribution of the property and compliance with the program requirements.  All correspondence regarding the property was conducted between the FLSASP and the qualified organization, often via email.

4.      United States property designated as excess and/or surplus was offered and made available to qualified organizations by GSA through electronic postings of the equipment on a web-based system titled "GSAXcess."

5.      The servers that processed "GSAXcess" transactions were located in Eagan, Minnesota and backed up in Salt Lake City, Utah. When a qualified organization requested property through the "GSAXcess" system, a wire communication was initiated for the request of property.

6.      A "qualified organization" was defined, in pertinent part, as "[a]n eligible nonprofit organization or institution which is exempt from taxation under section 501 of the Internal Revenue Code (26 U.S.C. 501), for the purpose of education or public health (including research for any such purpose)." This definition included museums attended by the public.

7.      A qualified organization obtained property from FLSASP by identifying surplus U.S. Government property that it needed and then submitting a request to the FLSASP for those items.  A qualified organization made such requests through its authorized representatives. A qualified organization must have submitted an eligibility application to the FLSASP, which identified the intended use of each surplus item obtained.  The program did not permit private individuals or charities to obtain federal property for personal use or gain.

8.      Qualified organizations were permitted to obtain the requested surplus property items only if they complied with certain regulations established by GSA and the FLSASP.  The regulations included the following requirements: (a) the item(s) shall be placed in use, for the reported purpose, by the organization no later than 12 months of the organization obtaining the item(s), (b) the items are to be used by the organization for a total of at least 60 months before the organization is allowed to sell, loan, trade, or otherwise dispose of the items, (c) some items

require a perpetual agreement and the organization is never allowed to sell, loan, trade, or otherwise dispose of the item, and (d) the organization is to obtain permission from GSA and/ or the FLSASP before it is allowed to sell, loan, trade, or otherwise dispose of the items.

9.      In the event that a qualified organization did not use or handle the property as required by the program and listed in the previous paragraph, title and right to possession of the property shall, at the option of GSA, revert to the United States Government.  Upon demand, the qualified organization, as directed by GSA through the FLSASP, must release the property to the U.S. Government.

10.      The Royal Air Museum, Inc. (hereinafter referred to as "the RAM") was considered a qualified organization to receive federal surplus property.  Defendant **MARK DANIELS**, Director of the RAM, was the authorized representative for the RAM according to the RAM's eligibility file that defendant **MARK DANIELS** submitted to the FLSASP.

### COUNT 1
(Wire Fraud, 18 U.S.C. § 1343)

1.      The General Allegations are realleged and expressly incorporated herein as if set forth in full.

2.      From on or about November 10, 2015 through on or about December 2, 2016, in Broward County, in the Southern District of Florida and elsewhere, the defendant,

**MARK DANIELS,**

did knowingly devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and

3

promises, did knowingly transmit and cause to be transmitted by means of wire communication

in interstate or foreign commerce, certain signs, writings, signals, pictures, and sounds, as more

particularly described below.

The Scheme to Defraud

3.      The scheme to defraud consisted of acquiring surplus U.S. Government property

by means of false and fraudulent representations concerning the intended use, placement and

location of that property, and thereafter selling, attempting to sell, transferring or otherwise

converting the property to the use of defendant **DANIELS** or to the use of another who was not

entitled thereto, in contravention of the stated purposes under which defendant **DANIELS** was

permitted to acquire the property initially.  Among the items fraudulently obtained by defendant

**DANIELS** was a Learjet C-21A aircraft, Serial Number 84-0111, Tail Number N400DY

(hereinafter referred to as "Learjet 84-0111").

4.      As part of the scheme to defraud, on November 10, 2015 defendant **DANIELS**

submitted a signed letter of intent to the FLSASP on behalf of the RAM seeking acquisition of

Learjet 84-0111.  The letter of intent stated, in pertinent part, the following:

> The aircraft will be used to promote our organization and preservation of
> aerospace history, which includes purposes of display, exhibition and educational
> purposes.  As the subject aircraft are listed with GSAexcess, it will be utilized for
> purposes of the museum and would remain as museum property subject to the
> terms and regulations as imposed by the GSA.  The request for multiple aircraft
> would allow our organization to be at simultaneous events and provide flexibility
> of schedules at different locations.  The subject aircraft to be kept and maintained
> in flyable status for display and exhibition purposes in accordance with FAA
> Regulations and Type Certificate specifications.  Use to include, but not limited to,
> i.e.; museum promotion use, display at airshows, Civil Air Patrol events, CJAA,
> ROTC promotion, Young Eagle events, EAA – Experimental Aviation Association
> events, etc.

5.      On January 25, 2016, defendant **DANIELS** signed a conditional transfer document for Learjet 84-0111.  The conditional transfer document stated, in pertinent part, the following:

> ...in consideration of and reliance upon the representations of the Royal Air Museum, Inc. (hereinafter called the Donee) that the property hereinafter described is required in the furtherance of the Donee's program and that such property will be used solely in connection with such programs and more specifically for all the following purpose(s): Transportation of professionals, executives, and personnel in accordance with the proposed program and plan as set forth in the Donee's 'Letter of Intent' dated November 10, 2015 as amended, which Expression of interest is hereby incorporated herein and made a part thereof, and for no other purpose, does hereby deliver, sell, assign, and transfer all of its rights, title, and interest in and to the following described non-combat-type aircraft, aircraft engines, and propellers, AIRCRAFT, LEARJET, C-21A, Serial # 84-0111...

The conditional transfer document also stated the following

> ... the Donee shall not sell, trade, lease, lend, bail, cannibalize, encumber, or otherwise dispose of the Property...without the prior written approval of GSA...

6.      On January 27, 2016, Learjet 84-0111 was officially transferred from GSA and the FLSASP to the RAM.

7.      On June 20, 2016, Leasetrust Corp was formed as  a Florida profit corporation, with a principal place of business address and mailing address in West Palm Beach, Florida, with INDIVIDUAL 1 designated as President, Secretary and Registered Agent.

8.      On July 18, 2016, defendant **DANIELS** opened an account at TD Bank, N.A. in Jupiter, Florida under the name Leasetrust Corp, account number xxxxxx0120, with defendant **DANIELS** and INDIVIDUAL 1 as signatories, and listing a legal address in West Palm Beach, Florida.  In connection with the opening of that bank account, defendant **DANIELS** submitted a corporate resolution authorizing the establishment of that account for Leasetrust Corp which was signed by defendant **DANIELS** as Director-Chairman and by INDIVIDUAL 1 as Director-President and Secretary.

5

9.     On November 30, 2016, defendant **DANIELS**, in the capacity as President, LeaseTrust Corp. LLC., signed an aircraft lease agreement to lease Learjet 84-0111 to Med Air LLC (hereinafter referred to as "Med Air") and Medway Air Ambulance, LLC (hereinafter referred to as "Medway"), as co-lessees, at the price of $20,000 per month for twelve months. On December 1, 2016, a representative of Medway signed the aircraft lease agreement. That lease agreement provided that an advance payment in the amount of $60,000 was due upon execution of the agreement.  Defendant **DANIELS** also sent an invoice along with the lease agreement directing that Medway pay the amount of $60,000, which constituted "First, Last and Security," by wire transfer from its account to the aforesaid TD Bank Leasetrust Corp account located in Jupiter, Florida.

10.     On December 2, 2016, Medway sent a wire transfer in the amount of $60,000 from its account at Bank of America, N.A. in Lawrenceville, Georgia to the aforesaid TD Bank Leasetrust Corp account. In December 2016, defendant **DANIELS** withdrew approximately $27,770 from the aforesaid TD Bank Leasetrust Corp account.

11.     Defendant **DANIELS** never delivered Learjet 84-0111 to Medway, never returned the funds which had been sent by wire transfer to the aforesaid TD Bank Leasetrust Corp account by Medway as described above, and ceased all communication with representatives of Medway.

<u>The Wire Communication</u>

12.     For the purpose of executing the aforesaid scheme, defendant **DANIELS**, on December 2, 2016, caused to be transmitted a certain wire communication in interstate commerce, more particularly described as a wire transfer in the amount of $60,000 from Bank of America, N.A. account number xxxxxxxx4240 to TD Bank, N.A. account number xxxxxx0120.

6

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

1.     The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant, **MARK DANIELS**, has an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

3.     The property subject to forfeiture as a result of the alleged offenses includes, but is not limited to: a sum of money equal in value to any property, real or personal, that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the violation alleged in this Indictment, which may be sought as forfeiture money judgment against the defendant.

A TRUE BILL

FOREPERSON _____

_____
JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

7

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

MARK DANIELS

_____ Defendant. _____/

CASE NO._____

**CERTIFICATE OF TRIAL ATTORNEY\***
**Superseding Case Information:**

**Court Division:** (Select One)

☐ Miami  ☐ Key West  ☑ FTL
☐ WPB  ☐ FTP

New defendant(s)   ☐ Yes   ☐ No
Number of new defendants   _____
Total number of counts   _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)  **No** _____

   List language and/or dialect  _____

4. This case will take  **5**  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   | | (Check only one) | | | (Check only one) | |
   |---|---|---|---|---|---|
   | I | 0 to 5 days | ☑ | Petty | | ☐ |
   | II | 6 to 10 days | ☐ | Minor | | ☐ |
   | III | 11 to 20 days | ☐ | Misdemeanor | | ☐ |
   | IV | 21 to 60 days | ☐ | Felony | | ☑ |
   | V | 61 days and over | ☐ | | | |

6. Has this case previously been filed in this District Court? (Yes or No)  **No**

   If yes: Judge _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)  **No**

   If yes: Magistrate Case No. _____

7. Related miscellaneous numbers:  _____

   Defendant(s) in federal custody as of  _____

   Defendant(s) in state custody as of  _____

   Rule 20 from the District of  _____

   Is this a potential death penalty case? (Yes or No)  **No**

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No)  **No**

9. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No)  **No**

10. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No)  **Yes**

_____

Lawrence D. LaVecchio
Assistant United States Attorney
FLA Bar No.     305405

\*Penalty Sheet(s) attached

REV 3/19/21

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** MARK DANIELS

**Case No:** 

**Count #:** 1

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max.Penalty:** 20 years' imprisonment, $250,000 fine, 3 years' supervised release

**Count #:**

**\*Max. Penalty:**

**Count #:**

**\*Max. Penalty:**

**Count #:**

**\*Max. Penalty:**

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**